**Tina N. GRANT, Appellant–Respondent,**

v.

**Gregory M. HAGER, Appellee–Petitioner.**

**No. 82A01–0511–CV–490.**

Court of Appeals of Indiana.

Aug. 29, 2006.

Timothy J. Hambidge, Olsen, White & Hambidge, LLP, Evansville, IN, Attorney for Appellant.

John P. Brinson, Evansville, IN, Attorney for Appellee.

**OPINION**

VAIDIK, Judge.

**Case Summary**

Tina Grant ("Mother") appeals the trial court's decision to award her ex-husband, Gregory Hager ("Father"), child support following Father's support modification request. The trial court based its decision on calculations under the Indiana Child Support Worksheet. After crediting Father, the noncustodial parent, with a parenting time credit for 156 overnights per year, the Worksheet indicated that Father's weekly child support obligation was—$91.81. The trial court, therefore, ordered Mother, as the custodial parent, to pay Father $91.00 per week. We hold that the present Indiana Child Support Guidelines, while authorizing the use of a Parenting Time Credit to *reduce* the support obligation of a noncustodial parent, do not permit the application of the credit in a manner that requires a custodial parent to

pay child support to a noncustodial parent. Because the Parenting Time Credit in this case is sufficient to reduce Father's child support obligation to $0.00, we remand and instruct the trial court to enter an order excusing Father from the payment of child support.[1]

## Facts and Procedural History

Tina Grant and Gregory Hager were granted a dissolution of marriage on April 14, 2003. There were two children born of the parties' marriage, a boy and a girl. Pursuant to court order, the parties were granted joint legal custody of the children with Mother designated as the primary physical custodian. Father was ordered to pay child support in the amount of $108.00 per week, pursuant to the Indiana Child Support Guidelines (alternatively, the "Guidelines").

On April 21, 2005, Father filed a petition to modify child support with the court. A hearing was held on August 29, 2005, and Father submitted a Child Support Obligation Worksheet ("the Worksheet") prepared in accordance with our Guidelines and based on Father's annual earnings of $55,935.18 and Mother's earnings of $105,724.00. *See* Appellee's App. p. 2. Pursuant to these figures, then, Father earns approximately 34.6% of the couple's total weekly adjusted income of $3108.83, while Mother earns approximately 65.4% of that amount. *Id.* It was also determined that Father provided $55.00 per week in health insurance premiums toward his children's support. *Id.* Following the computations set forth under our Guidelines, the total weekly child support obligation of the couple for their two children equals $517.00, 34.6% ($178.89) of which is Father's responsibility and 65.4% ($338.11) of which is Mother's. *Id.*

In addition, Father, the noncustodial parent, exercised visitation since the divorce of approximately 156 overnights per year. Proportionally speaking, this amounts to approximately forty-three percent of the time. The trial court determined Father's Parenting Time Credit pursuant to our Guidelines to be $215.70. *Id.* Adding this credit to Father's $55.00 credit for health insurance premiums, the Worksheet indicated that Father's child support obligation, as the noncustodial parent, was—$91.81. *Id.* On September 9, 2005, the trial court entered a judgment modifying child support, which stated:

> After review of the child support rules and guidelines, specifically Guideline 6, and after hearing evidence herein, the Court finds that the father is exercising approximately 156 overnights per year with the parties' minor children, and after review of the parties' respective incomes, now finds that the mother shall pay child support to the father in the amount of $91/wk, beginning September 9, 2005, and each week thereafter until further order of the Court; ... Court acknowledges that the mother is the primary custodial parent; however, the Court finds that the current child support guidelines are significantly controlled by the number of overnights exercised by a non-custodial parent and the parties' respective incomes; the Court further that [sic] that pursuant to Guideline 6 that the parties should income share the duplicated fixed expenses (child rearing expenses) and the Court therefore orders expenses including but not limited to ballet, music lessons, martial arts lessons, Girl Scouts, and all other extra-curricular activities of the children paid by the parties, 65%

---

1. We held oral argument in the Court of Appeals' courtroom on August 2, 2006. We commend counsel for their excellent presentations.

by the mother and 35% by the father;....

Appellant's App. p. 1 (CCS Entry dated Sept. 6, 2005). The parties agree that the trial court based the $91.00 support amount on the negative amount arrived at under the Worksheet (—$91.81), awarding the approximate absolute value of that amount to Father as the noncustodial parent. Mother now appeals the amount awarded by the trial court.[2]

### Discussion and Decision

■ Mother presents an issue of first impression for this Court to review, which we restate as follows: whether, in a shared parenting time child custody arrangement, a custodial parent may be ordered to pay child support to a noncustodial parent based upon the Parenting Time Credit under the Indiana Child Support Guidelines.

It is important to note that Mother is not challenging the modification of the support award entirely. "Mother agrees that Father has the children approximately 43% of the time. Mother did not request any child support from Father and, in fact, asked the Court, that since the number is a negative number, that the Court terminate child support all together." Appellant's Br. p. 3 (internal citations omitted). In other words, Mother asks this Court to find that while modification of the child support award in this case is appropriate pursuant to the Parenting Time Credit, the credit may only be used to diminish or extinguish a noncustodial parent's support obligation, not to require a custodial parent to make support payments to a noncustodial parent. As such, the parties ask us to determine the state of

the law under our current Child Support Guidelines. We review questions of law *de novo. Carmichael. v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001).

A brief overview of our Child Support Guidelines provides a background from which our discussion may proceed. Before 1988, Indiana, like most states, determined the amount a noncustodial parent owed for support of a minor child on a case-by-case basis, relying only on the discretion of a trial judge without any system in place to provide a balance or uniformity among support awards. In 1988, the federal Family Support Act[3] ended indiscriminate child support determinations, requiring states to implement presumptive child support guidelines and calling for the review of those guidelines at least every four years.

In response, the Indiana Supreme Court adopted the Indiana Child Support Rules and Guidelines, effective October 1, 1989. The Guidelines follow the Income Shares Model of child support, which "is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together." Ind. Child Support Guideline 1. The Income Shares Model relies on various studies reviewing the proportion of household income spent on children based upon the level of income and the number of children in the home. *See* Jane C. Venohr & Robert G. Williams, *The Implementation and Periodic Review of State Child Support Guidelines,* 33 Fam. L.Q. 7, 12 (1999). Based on this model, our Guidelines "calculate child support as the share of each parent's income estimated to have been spent on the child

---

**2.** Neither parent challenges the trial court's decision to require each parent to pay its income-based share of other child rearing expenses, and we therefore do not address that portion of the award further in this opinion.

**3.** 42 U.S.C. § 667.

if the parents and child were living in an intact household." Child. Supp. G. 1. With this background in mind, we find that the answer to the inquiry before us today is dictated by the language of our Child Support Guidelines and the comments thereto.

Indiana has established a child support system based largely on the traditional division of parental involvement following divorce, i.e., one parent selected as a primary physical custodian and the other exercising regular parenting time, usually every other weekend.[4] This is reflected in the structure of our Guidelines, which presume that child support payments run from a noncustodial parent to a custodial parent because the custodial parent is presumed to provide for the children a majority of the time and therefore to require additional financial support. See id. ("If one parent has custody, the amount calculated for that parent is presumed to be spent directly on the child. For the noncustodial parent, the calculated amount establishes the level of child support."); Ind. Child Support Guideline 3(F)(1) ("Although a monetary obligation is computed for each parent, the custodial parent's share is not payable to the other parent as child support. Instead, the custodial parent's share is presumed to be spent directly on the child."); Child. Supp. G. 3, cmt. 1 ("Custodial parents are presumed to be meeting their obligations by direct expenditures on behalf of the child, so a support order is not entered against the custodial parent."). When operating under a traditional parenting time arrangement, this notion of payment by the noncustodial par-

ent based on that parent's ability to pay typically represents the most logical course of action for the courts.

Father's argument before this Court today, however, suggests that blind application of the "noncustodial parent pays" rule of thumb may violate the principles behind one of the most popular trends in child custody arrangements: shared parenting time. For our purposes, shared parenting time refers to a situation where a noncustodial parent exercises more than the traditional amount of parenting time, that is, more than approximately fifty-two overnights (or 14% of the overnights) per year. See Ind. Child Support Guideline 6, cmt. (Parenting Time and Child Support). Many child support analysts have observed that shared parenting time, as opposed to a traditional parenting time arrangement, results in added costs to the noncustodial parent because that parent must maintain a home and lifestyle that is more similar to that of the custodial parent in order to properly care for the couple's children. See, e.g., Marygold S. Melli & Patricia R. Brown, *The Economics of Shared Custody: Developing an Equitable Formula for Dual Residence,* 31 Hous. L.Rev. 543, 554 (1994). In other words, because the noncustodial parent actually has custody of the children for an amount of time approaching or even equal to that of the custodial parent, that parent is required to spend an amount increasingly equal to that of the custodial parent in order to meet his or her own direct costs during parenting time. If the noncustodial parent is still ordered to pay the same amount of child support to the custodial parent despite the

4. The Indiana Parenting Time Guidelines support this notion. The Parenting Time Guidelines are presumptively applicable "to all child custody situations, including paternity cases and cases involving joint legal custody where one person has primary physical custody." Ind. Parenting Time Guidelines, Scope of Application par. 1. They provide, generally, for the noncustodial parent to exercise parenting time on alternate weekends and one evening per week with children ages three and older and every other weekend and for an extended period each summer for adolescents and teenagers. *Id.* at §§ II(B) & (C).

fact that the noncustodial parent spends more time with the children, he or she is essentially meeting part of his or her financial responsibility twice.

The following text sets forth the considerations underlying this quandary, often referred to as the problem of duplicated expenses:

> There is general agreement that shared custody is more expensive than sole custody. The major cause of this additional expense is the need to duplicate housing and related costs, such as utilities, household furnishings, play and study space, toys, and play equipment. These expenditures have been estimated to constitute from one-fourth to one-third of the total child-related expenditures for a child up to age eighteen. They are items that must be duplicated when a child resides with both parents. These costs are not reduced for the primary parent when the child spends considerable time with the other parent. Conversely, the nonprimary parent does not have to provide less in the way of housing for the child because the other parent has already provided it. This type of expense constitutes the largest increase in expenditures when shared custody is chosen as the form of postdivorce custody.
>
> Child support law addresses the cost of postdivorce housing in the sole custody case by assuming that the cost of the household includes a home for the [custodial] parent and the children that is the same or as close to that provided in the intact family as economically possible. The child support payment is calculated to help cover these costs. But providing for housing when the child visits the noncustodial parent is not considered in allocating costs. The type of home of the noncustodial parent depends on what that parent can afford, in addition to contributing to the housing costs in the custodial household. However, if the noncustodial parent strives to maintain a stable and meaningful relationship with the children, that parent will need to make substantial provisions for the children when they "visit," probably including provision for overnight stays. This may be a particular problem for lower income noncustodial [parents].

*Id.* at 554–55 (footnotes omitted). In sum, the problem with duplicated expenses is that the noncustodial parent pays first for his or her share of the expenses incurred by the custodial parent, then pays again the whole of his or her own expenses, which are increased because of the shared parenting time arrangement. Absent some mechanism to account for these increased costs, the noncustodial parent is paying more than a "fair share" of the now-increased child-rearing expenses.

Various methods have been employed by states attempting to address this problem. A common solution involves multiplication of the basic child support obligation, frequently by 150%, to represent the added expenses of the noncustodial parent. *See* Venohr & Williams, 33 Fam. L.Q. at 21–22. The noncustodial parent's share of those expenses, proportional to that parent's income, is then offset by an amount representing the increased parenting time exercised by the parent.

Indeed, Indiana expressly recognizes the problem of duplicated expenses. Our Guidelines provide that:

> The fixed expense of the parent who has primary physical custody is included in the Guideline support schedules. However, the fixed expense of the other parent is not included in the support schedules but represents an increase in the total cost of raising the child(ren) attributed to the parenting time plan. Both

parents should share in these additional costs.

Child. Supp. G. 6, cmt. (Analysis of Parenting Time Costs). Our Guidelines provide a Parenting Time Credit that increases incrementally as the noncustodial parent exercises increased parenting time. *See id.* (Computation of Parenting Time Credit, Table PT). As recognition of the duplicated costs incurred by the noncustodial parent,[5] the Guidelines authorize application of that credit against the support obligation of that parent.[6]

The case before us, however, presents a situation that does not appear to be directly contemplated under our Child Support Guidelines: where the noncustodial parent makes less money than the custodial parent, and where the Parenting Time Credit is applied to offset the noncustodial parent's support obligation, it is possible for the calculations under the Child Support Worksheet to result in a *negative* total amount of support owed by the noncustodial parent. That is what happened in this case. The question posed by this result, then, is whether the absolute value of that negative amount represents the child support obligation of the *custodial* parent to the noncustodial parent.

Father argues that it does. He cites Guideline 3(F), which provides:

Each parent's child support obligation is determined by multiplying his or her percentage share of total weekly adjusted income ... times the Total Child Support Obligation. . . .

1. Division of Obligation Between Parents. . . . The total child support obligation is divided between the parents in proportion to their weekly adjusted income. Although a monetary obligation is computed for each parent, the custodial parent's share is not payable to the other parent as child support. Instead, the custodial parent's share is presumed to be spent directly on the child.

Father contends that "[t]he statement in Child. Supp. G. 3(F) that the custodial parent's share is not payable to the other parent, but is presumed to be spent directly on the child, must yield to the mathematical and economic reality that in some instances, the custodial parent's share of child support is *not* spent directly on the child." Appellee's Br. p. 7. He goes on to say, "That is most true when the children are not with the custodial parent but rather with the noncustodial parent, for substantial periods of time. In that situation, it is the noncustodial parent who is spending directly on the children, not custodial [sic] parent." *Id.* Moreover, Father ar-

---

**5.** It is worthy of comment that Indiana does not multiply the basic child support obligation by 150%. Instead, our Guidelines credit the noncustodial parent with a percentage of duplicated expenses that presumptively increases as the amount of parenting time increases, but those duplicated expenses are never added to the basic child support obligation. *See* Child. Supp. G. 6, cmt. (Table PT). This has the effect of reducing the noncustodial parent's portion of the child support obligation without first recognizing that the basic obligation—that which is shared by the parents—has increased as a result of duplicated expenses. At least in theory, this method actually frustrates the intent of the Income Shares Model—that children receive the same level

of support from each parent as they would had the family remained intact—and, particularly in lower-income families, increases the possibility that *neither* the custodial nor the noncustodial parent can maintain a standard of living suitable for their children.

**6.** The Guidelines do, however, provide that "Parenting Time Credit is not automatic." Child. Supp. G. 6, cmt. (Application of Parenting Time Credit). "The court should determine if application of the credit will jeopardize a parent's ability to support the child(ren). If such is the case, the court should consider a deviation from the credit." *Id.*

gues that "the noncustodial parent's duplicated expenses of maintaining a home for the children go up with additional parenting time, and these increased expenses are an additional cost of child rearing which should be shared by both parents." *Id.* at 9.

Father suggests that a negative child support amount "signifies that the noncustodial parent is paying more than his share of the child rearing expenses" and that "[t]here is no theoretical reason why the custodial parent should not transfer money to the noncustodial parent to equalize the disparity." *Id.* Finally, he argues that "in the absence of a transfer to the noncustodial parent, the custodial parent gets a windfall because part of her presumed costs are born[e] by the noncustodial parent." *Id.*

As we address below, we have taken notice of Father's argument, and we believe that it is a worthy point of discussion for the next review of our child support system. However, we are unable to agree with Father that our Guidelines, as presently written, authorize child support payments running from a custodial parent to a noncustodial parent based on the Parenting Time Credit.

As we have outlined above and as both parties note in their briefs, the Guidelines repeatedly reference the payment of child support running from the noncustodial parent to the custodial parent. *See* Child. Supp. G. 1; Child. Supp. G. 3(F)(1); Child. Supp. G. 3 cmt. 1. Not one reference is made contemplating a reverse scenario, that is, payment of child support by a custodial to a noncustodial parent. This reading of the Guidelines is buttressed by the fact that the Guidelines also repeatedly reference the presumption that a custodial parent spends his or her portion of child-rearing costs directly on the children and does not owe any portion of that to the

noncustodial parent. Child. Supp. G. 3(F)(1); Child. Supp. G. 3 cmt. 1. Again, no provision is made for any situation where this may not be the case and where a noncustodial parent may be considered deserving of support payments.

▉ However, perhaps the most germane language contained in our Child Support Guidelines regarding this issue is that portion of Guideline 3(G) regarding the Parenting Time Credit itself, which neither party cited in their briefs. The Guideline provides, in relevant part, that "[t]he court may grant the noncustodial parent a *credit toward his or her weekly child support obligation* ... based upon the calculation from a Parenting Time Credit Worksheet...." Child. Supp. G. 3(G)(4) (citations omitted). A straightforward reading of this text indicates that the Parenting Time Credit may only apply *toward*—i.e., it may only *reduce*—a noncustodial parent's support obligation. The Guidelines do not authorize application of the credit in a manner that *exceeds* the support obligation of the party benefiting from the credit. In other words, the Parenting Time Credit may only be applied to reduce the noncustodial parent's support obligation to $0.00; it may not be applied to require payment of child support running from the custodial to the noncustodial parent. Therefore, while it is true that calculations under the Worksheet may properly result in a negative amount, that amount in practice can only represent a child support obligation of $0.00 payable to the custodial parent on the part of the noncustodial parent.

Guideline 3(G)(4) also proves relevant in addressing Father's contention that Mother's argument contravenes the commentary to Guideline 6 regarding the sharing of duplicated expenses. That portion of Guideline 6 provides:

[T]he fixed [duplicated] expense of the [noncustodial] parent is not included in the support schedules but represents an increase in the total cost of raising the child(ren) attributed to the parenting time plan. Both parents should share in these additional costs.

To the extent that a noncustodial parent receives a Parenting Time Credit, such a credit is actually a return of his or her support obligation from the custodial parent, who would otherwise be entitled to the money through support payments. In this manner, Mother *is* sharing the additional costs arising from increased duplicated expenses. However, Father's apparent assertion that a custodial parent should be required to share in those expenses even to the extent that he or she may be required to make payment to the noncustodial parent cannot be harmonized with the language of Guideline 3(G)(4) indicating that the Parenting Time Credit may only apply to reduce the child support obligation of the noncustodial parent to $0.00. Nor can it be held consonant with the Guidelines' repeated statements suggesting that a custodial parent is presumed to meet his or her support obligation by direct expenditures and so should not be ordered to pay child support. We can only read the comment to Guideline 6, then, to require that a custodial parent share in the additional duplicated costs arising from shared parenting arrangements to the extent that the custodial parent is otherwise entitled to receive support payments from the noncustodial parent.

Because we have found that the present Guidelines preclude the payment of child support from a custodial to a noncustodial parent, we need not further address Father's alternative argument that a trial court may exercise its discretion to order the payment of support in this manner. We therefore must reverse the trial court's award of child support payable by Mother and remand with instructions to order that neither party owes the other support under their current shared parenting time arrangement.

Again, we stress that our opinion today is based on the Guidelines as presently written. The federal Family Support Act requires that each State review their child support guidelines at least once every four years. Father presents an issue that may be of considerable interest upon our State's next review. At the core of the Income Shares Model of child support is the notion that a child is entitled to each parent's share of child-rearing expenses, *see* Venohr & Williams, 33 Fam. L.Q. at 12, and it is reasonable to regard this responsibility as one that flows between the parents rather than one that may flow only from a noncustodial to a custodial parent. This is highlighted by the realities of the shared parenting arrangement.

Indeed, our own non-exhaustive search of only a handful of other States' guidelines reveals that at least some other States following the Income Shares Model have recognized the possibility that a lower-income noncustodial parent may, based on shared parenting, be entitled to child support payments from a custodial parent. Arizona, for example, provides that "In appropriate cases, a custodial parent may be ordered to pay child support." Ariz. Child Support Guideline 2(E). California provides in all cases that "If the amount calculated under the formula results in a positive number, the higher earner shall pay that amount to the lower earner. If the amount calculated under the formula results in a negative number, the lower earner shall pay the absolute value of that amount to the higher earner." Cal. Fam. Code § 4055(b)(5). And the Florida Court of Appeals has held that under that State's support guidelines, in cases of shared par-

enting where there is a significant disparity in parental incomes, a higher-earning custodial parent may be ordered to pay child support to a lower-earning noncustodial parent. *Clarke v. Clarke*, 619 So.2d 1046, 1047 (Fla.Dist.Ct.App.1993) (per curiam); *see also* Fla. Stat. § 61.30(11)(b) (calculation of support for shared parenting time arrangement).

There are advantages and disadvantages to allowing child support payments to run from a custodial to a noncustodial parent. On the one hand, to do so encourages a noncustodial parent to participate more in his or her children's lives following divorce, and it results in more similar living environments for children when they go from one parent's home to the other's. On the other hand, it also has the potential to increase custody disputes by providing an incentive for a custodial parent to fight shared parenting time, and it takes money from the custodial parent, thereby reducing the likelihood that he or she will be able to provide a home more similar to that which the children would have enjoyed had the marriage remained intact. Where a matter is scheduled for regular review, however, these and other concerns are best addressed by the judicial committees charged with that review rather than by this Court.

Reversed and remanded with instructions.

DARDEN J., and RILEY, J., concur.